Richard Rome appearing. This case comes here after a conviction on two drug counts where a defendant was convicted of importing and possessing cocaine and methamphetamine and ultimately went to a jury trial and was convicted. And in our brief, we raised four issues. One was the sufficiency of the evidence and three other issues relating to sentencing matters. Factually, the defendant was caught driving drugs over the border and denied that the drugs were within his knowledge. And that was his defense at the trial. Now, with respect to that issue, it's our contention that the government did not meet its burden with regard to that and what the defendant, while he did admit to criminal activity and admitted that he was smuggling, his defense was that he just didn't know what was placed in his car. He thought it might have been an alien. He understood that he dropped his car off, left the location, came back and thought that he was going to be returning with an illegal alien or two in his trunk. And that was the issue for the court and the jury. And basically, it's our position that the government just didn't reach its burden. And then on that point, the conviction should be set aside. Okay. You're saying there's no evidence in the record upon which a jury could make its decision? I would say that's correct, that as far as on the issue of knowledge. Now, obviously, there were drugs in the car. No one can dispute that. But with respect to the defendant's knowledge, the only knowledge really are some inconsistencies in his statements when he talked to the authorities. But being able to actually prove that he knew, we contend that the government did not meet that burden with respect to that issue. But this was his car. He was by himself. And there are nine and a half pounds of methamphetamine and over 17 pounds of cocaine within his car that he's driving by himself. That's correct. That is a correct statement of what was found in the car. But again, in fact, we recently had the case where somebody bought a car at an auction, a government auction, and I believe the same issue came up. And that person ultimately convinced the authorities that he didn't know. So the mere fact that there are drugs that are discovered in an automobile should not be dispositive of that point. With respect to the sentencing issues, we raised three sentencing issues, one related to the acceptance of responsibility. And as was fully briefed, the defendant talked to numerous people. He talked to the border agents. He talked to the probation office. He talked and testified at trial and fully disclosed what he understood the facts were. And based on that, Mr. Diaz contends that he accepted responsibility, even though it is true that he did go to trial and had a slightly different version of events in the government. But he, in fact, did get up and admit that he committed a crime, which would have been illegal smuggling of an alien. But in fact, it turned out to be something else. So, again, I believe this court should review that, and I believe that the lower court erred in not finding that the defendant did what he had to in order to get the two-level or three-level decrease under 3E1.1. With respect to the next sentence. Your argument essentially is that if he admits to doing a crime, but he's sincere and entitled to put on his defense that he didn't commit the crime of indictment. It's just rather an issue if they've indicted for smuggling illegal aliens, and he was simply exercising his right to establish his lack of knowledge about the specific crime that he'd been charged with. I think you put it very well that way, Your Honor. We also have, in this case, a safety valve issue. It's a five-pronged test, and it comes down, in this case, there's no doubt that the first four prongs were met. The issue was whether the defendant provided information to the government, all the information that he had. And, in fact, again, he spoke with border authorities. He talked to the probation. He testified at trial. And based on that, it's his contention that he provided everything that he could provide. Was it truthful? I think that it was truthful. He testified under oath that that was his understanding of what happened, and it was truthful. And that's all that he has to do is truthfully provide relevant information and evidence to the government. And apparently there was some arguments made about that the government didn't debrief him, but he had already basically three times spoken with authorities throughout the case. And so I think the safety valve should have applied in this situation. In your brief, you indicated that the government rebuked or resisted your efforts before and after trial to arrange a proffer session. Where is that in the record? The only place that it's in the record is, I believe, in the defendant's attorney's sentencing papers. I think in his argument that the trial lawyer made that argument, I'd have to check the record to find the spot of that point. And I don't know that having further briefing would make any difference if, in fact, he'd already spoken on three occasions throughout the proceedings in any event. And with respect to the last sentencing issue, there's a question as to whether the sentencing amendments or change to 2D1.1A3 would be retroactive to have an impact on this particular sentence. The defendant was sentenced in July of 2002, and there was an amendment that was effective in November of 2002. And his appeal was pending. So the rule allows him to take advantage of it if it, in fact, can be deemed to be retroactive or a clarification. Two circuits have held that it's substantive and not a clarification, right? I don't know that two circuits have dealt with that specific point. Second and seventh? Well, if they have, they're mistaken and have erred in their ruling. That's a good answer. And it gives this Court a chance to straighten them out. We've been doing that many times. Get a cert on a split of jurisdictions. We love our Ninth Circuit practitioners. They're loyal. But it's interesting because it relates. It's interesting because if you receive a minor role or a mitigating role and you're sentenced under 2D1, the cap is, you can't have base-level offense of more than 30, and he had a 38. And if, in fact, a mitigating role is all about reducing sentence, so it would appear that when they made that change, that that's just a clarification of the general philosophy that it should be retroactive to enable him to take advantage of the harsh drug laws and the kind of sentence that was meted out in this case. If I could save my minute, I'd appreciate that. You may. Thank you. Thank you. May it please the Court. Your Honors, my name is Michael Kaplan. I represent the United States in this matter and was also trial counsel in the district court. With respect to the claim that there was insufficient evidence to support the jury's finding, as this Court well knows, that is, this Court has to view the case in a light most favorable to the government and whether or not any rational trier of fact could have found the essential elements of guilt beyond a reasonable doubt. All inferences and deference must be given to the jury's decision in their verdict. You seem to have heard that before. Yes. In fact, we probably, somebody on this Court probably wrote that. It's still alive. Thank you. In this case, there was more than sufficient evidence, really beyond any doubt, that the defendant in this case knew exactly what he was doing on that date. The defendant was the driver, sole occupant. Those two factors alone this Court has found to be sufficient evidence for a jury to infer knowledge. And even beyond that, the defendant was the registered owner of the car. And what's significant about the registered ownership is that when he came to the port of entry, he actually said he wasn't the registered owner. So he made just a blatant lie to the primary inspector. And then when it comes out at trial, well, he turns out to be really the registered owner of the car. So there's a lie. Right. But his claim is that he was guilty, ultimately, says in his briefs in today, look, I'm guilty of a crime, but not the one you indicted me for. Sure, when I came across the border, I was trying to avoid detection, but not because I was smuggling drugs. I thought I was smuggling people. So you got me for the wrong thing. I would have been really cooperative if you had just, in fact, I would have played out probably, is the essence of what he's saying, if only you charged me with smuggling illegal aliens. So that sort of depends all the way down from his conduct at the border through the acceptance of responsibility and the like. So what's your response to what counsel argued in that? He lied. He lied? Who, counsel lied? No, no, not counsel. I'm sorry. Counsel, the defendant, appellant, lied in the case whether or not there was an alien. I think that's an incredibly easy way to avoid criminal liability if all you have to do is say that you thought you were doing some other illegal conduct, just not the conduct for which you apparently caught me for. I mean, we'd never come to court because everybody would get off if that were the case. The jury apparently found, in contrary and with all due respect to appellant's counsel, that he knew that there were drugs in the car, not only because he was a driver, sole occupant, registered owner, but he was nervous as well. And his story was just, quite frankly, just incredible. I mean, I know your Honor's read the transcript, but here's an individual who said that he was set up by somebody named Injun. And by the way, he didn't know Injun's last name, yet he knew Injun for 18 or 19 years. And actually, I think at some point in the testimony, he said it was his very good friend. Didn't know where Injun lived in Mexico, didn't know his phone number, didn't know where he worked in Mexico. Couldn't really provide any information about him at trial. And his story continued to be even more incredible when it came to the questioning of how he actually obtained this car. According to him, he obtained it from an individual named Indio. Well, what's Indio's last name? Well, I don't know that. Well, what's his phone number? I don't know. What's his last name? I don't know. Where does he live? I don't know. Well, how does he get in touch with you? Well, he has my cell phone number. Mr. Appellant, what's your cell phone number? Well, I don't know it. I mean, it just went on and on and on. It just got to be completely ridiculous. And I think the jury saw right through it. And here clearly was a case of a guy who just tried to get off these particular charges by saying he was actually culpable of some other crime. And the facts didn't bear that out, and the jury saw through it. And I think that the verdict should be affirmed with respect to the two counts. Now, with respect to acceptance of responsibility, it does not apply to an individual who puts the government to its burden of proof at trial and who contests a key factual element that comprises the offense of conviction. The defendant in this case contested knowledge, which is probably the main element of the offense, knowing whether or not there were drugs in the car. He contested that. The jury found that he actually knew there were drugs in the car. And he didn't put the government to its burden of proof. Even after trial, he continued to contest that knowledge, never accepting responsibility for what he did. And I think this court has found in another case, in the United States v. Sotelo, that a defendant who argues that the government failed to prevent sufficient evidence at trial concerning an element of an offense is disqualified from acceptance of responsibility. And that's what he did in this case. He did not accept responsibility, and he does not qualify. And the district court did not clearly err in finding that he did not qualify for acceptance of responsibility. With respect to Appellant's next claim with safety valve, the court just heard a lot about the safety valve statute. What maybe wasn't said is that the defendant, at the very least, has the burden of coming forward to the government and saying, I don't have any more information to provide to you. Now, I know that there was apparently, and I didn't even realize this, a claim that the government didn't want to have a proper session with the appellant, but I can assure you that wasn't the case. The appellant never came forward and asked to meet with the government afterwards. And it is his burden. I mean, this court stated or analyzed the safety valve provision in the United States v. Thompson, and it clearly pointed out, as this court recognized earlier, that this provision applies to individuals who truly want to cooperate with the government. They come forward. They tell everything they know. It gets them beneath the minimum mandatory, even if they don't have information sufficient to substantially assist the government. The defendant never made any effort to come forward to the government and say he had any other information or any more information. And I think implicitly the district court found that when the government told the sentencing, the government actually stated to the district court in arguing that the safety valve didn't apply, that the defendant's story was incredible. We just, you know, it wasn't believable. And the defendant never came, or the appellant never came back and said, okay, let me tell you what happened in the case. It's his burden, and he just didn't meet it. With respect to the last sentencing issue, the mitigating roll cap, that mitigating roll cap is not retroactive. In order to be retroactive, if it is a substantive and non-clarifying amendment, it has to be listed in Sentencing Guidelines Section 1B1.10d. Clearly, Amendment 640, which is the amendment in question here, is not listed in that provision. So even if this court finds that it is a substantive amendment, it doesn't get retroactive effect. But it wasn't a substantive amendment. I mean, it was a substantive amendment. I was going to say. Right, right, right. I wasn't making this point. It was a substantive amendment. It doesn't get retroactive effect because it wasn't listed in that Guidelines Section. It clearly was not a clarifying amendment for three reasons. The first is that this court is directed to look at the language used by the Sentencing Commission in determining whether or not it's a clarifying amendment. And here the Sentencing Commission specifically used the word modified. And this court pointed out two other circuits found that it is a modification or a substantive amendment, not a clarifying amendment. The Commission actually said that this provision modifies Section 2D1.183. It does not clarify it. Also, the court should look to whether the versions of the Guidelines differ dramatically. And clearly, the prior versions of the Guidelines, the November 1st, I think, 2000 Guidelines, which Appellant argued, by the way, that those were the Guidelines applicable in this case, did not have that provision. And dropping a base offense level from 38 to 30 is a dramatic difference in the Guidelines. And the last thing the court could look at to determine whether or not it's a clarification or a substantive amendment is whether or not it changed the law of the circuit. And clearly, the law of the circuit before was that an individual carrying the quantity of drugs Appellant was possessing in this case, his base offense level was a 38. It was not a 30. There wasn't any way to get to a 30 through the Guidelines until this particular provision was put into play.  And therefore, for those three reasons, it was a substantive amendment that was not a court of retroactive effect. Thank you. Apparently not. Thank you very much. Case just argued is submitted. And we thank again, we thank counsel for their argument. Next case on calendar is United States versus Rivera. Good morning, Your Honor. My name is Michael Gordon. I'm an assistant federal public defender out of Phoenix, Arizona. And I represent the Appellant in this case. With the court's permission, I'd like to reserve three minutes for rebuttal. Okay. Watch your clock. I will do that, Your Honor. I'll remind you if I remember. Thank you. Mr. Alfred Garcia Rivera comes before this court convicted of being a felon in possession after he was stopped in Phoenix, Arizona on June 7, 2001. This court subsequently issued an order that we address specifically the question of whether the jury instruction we've challenged violated the constitutional right to unanimity. Did you take any exception to the jury instruction? Yes, Judge. I think. On the basis of unanimity? On the basis of duplicity, Judge. Duplicity, but not unanimity. But I would hasten to add that a duplicitous indictment carries with it the risk of a nonunanimous verdict. And when she objected, when the defense counsel objected in this case to a nonunanimous verdict, she was saying the problem is, I'm sorry, to a duplicitous indictment, she was saying the problem is, Judge, we have all the risks inherent with the duplicitous indictment, which include a nonunanimous verdict. There was extensive discussion on the record as the district court was grappling with the issue on how to deal with it, whether to deal with it by interrogatory or whether to deal with it by specific. Well, apparently the parties submitted interrogatories and the court didn't accept any of the interrogatories. That's correct. Both parties submitted interrogatories. I can proceed to give the jury instructions. And then the question I asked you was did the defender actually give an objection to the instructions on the failure of the district court to require the jury to give a unanimous verdict? The direct answer to your question is no in terms of actually using the term. All right. If we find that there's some question with the language at page 366A of volume 2 of the ER, which is page 19 of the instructions, by what standard do we review it? Judge, I think that's a difficult question. I think the question, the first question the court has to ask, because this is a constitutional question, this is a Sixth Amendment right, is whether it's structural or not. You don't raise a constitutional claim when the instructions are given. Does that constitute a waiver? No, I don't think it does, Judge, because the inherent problem with the duplicitous indictment is the fact or is the question. I don't want to talk about duplicity. I want to talk solely about unanimity. Correct. Then I don't understand your question. You want to take me back and hang your hat on duplicitous, and I want to talk about unanimous verdicts. Well, let me just say this. The reason I do this is because there's so many ors in there, and you can't figure out what the court's talking about if you just read plain English. I agree. Let's hear from the government on it. I think I know where you're coming from. You'd like to send this back. And, Judge, let me just say that. I just like your legal theory is all. My legal theory is this, that if it is subject to harmless error, then and if she, in fact, waived the issue by not directly saying to the district court, gee, there's a problem with this jury instruction because it's ambiguous and it could allow a nonunanimous verdict, this court in two different cases have found that when there is a jury instruction that provides for a genuine possibility of a nonunanimous verdict, that it was plain error. So, and, Judge, I understand that you didn't, when you issued the order, when the panel issued the order that we addressed the issue, there was no suggestion that we should provide further briefing. I could give the courts the citations to that now or I could provide it in supplemental briefing. We just asked you to deal with it in argument, though. You're doing fine. All right. Thank you, Judge. There's a United States v. Gilly, which is 836F2-1206. Go slowly, sir. Wait a minute. If you want to submit some supplemental authorities, give us a 28-J letter, or if you'll go to the clerk before you leave the courthouse, they'll give you a gum sticker label that we can fill out three copies with your citations, and they'll see that each one of us get it. I will do that. Don't waste your time giving us a whole bunch of cites here that we get screwed up. And give it to, of course, the government. I will do that, Judge. Thank you. I think this Court has held, and I'll give the Court the citations, that it is plain error when a jury instruction is given that creates a genuine possibility that we're going to have a nonunanimous verdict. I think when you read the record, it's fairly clear, although it's not entirely clear, that the district court intended, specifically intended to give an instruction that required the jury to make a finding as to the specific date of which the defendant possessed the gun. The genesis of the problem ultimately was that the government, rather than using the so-called reservation statement, the statement that he said he possessed the firearm on an earlier occasion, rather than using that as a 404B statement as evidence that he was actually possessing the gun on or about those dates, the court, the government said, we think that statement alone is sufficient. What is obviously happening in this record is that the defendant is vigorously contesting that he knew the gun was in the car the date he was arrested, on June 7, 2001. The government's theory, or the theory of the prosecution then says, all right, we don't care. We don't care whether he really knew, because he's already admitted to possessing the gun a few weeks earlier. When that issue arises and when the government creates that theory of the prosecution, Judge Silver rightfully says, hey, we might have some variance problems in this case. The government then returns to the grand jury and comes back with a superseding indictment containing those dates that would encompass. May 19th to June 7th. Yes. Okay.  It doesn't specify the date of possession. It just says during a period on any of those dates. So the defendant's aware that he has to defend against the entire period. That's correct, Judge. Okay. But then the government argues, you can see that in the argument that we provided in the reply brief, they specifically continue to argue that the reservation statement alone is enough, even if you don't believe he knew the gun was under the seat on June 7th. And although the government would say and the government does say that the defense arguments were preposterous, it was a credibility determination with respect to the June 7th argument. The jury didn't need to get to that. The jury really could say, I don't care about the June 7th argument, or at least some of the jurors could have said that. And I believe that he was telling the police officers the truth when he said, I possessed the firearm on the reservation. Four of them could have said yes to that. Four of them could have said it was uninterrupted. And four of them could have said, I believe it when it was June 7th. The jury instruction that was given was just. Well, if any juror was voting for conviction based on A or C, they would encompass all of the dates and times involved. They would have a unanimous verdict. On A or C, let me. Because if a juror voted for C on June 7th, that would include A, which was about uninterrupted between May 19th and June 7th. No, I would. I don't think that has to be the case. Sure. If they both if that's what they voted. I mean, if their verdict was based on A and C or half on A and half on C, you would still have a unanimous verdict because all of them would agree that on June 7th, there was a possession. Oh, I see what you're saying. Because there's an intersection between the two dates. But the other one is B, about a week after the purchase of the firearm. Right. Which is another alternative. So you could have three jurors on A, three on B, and three on C because of the oars in there. Yeah, that would leave only nine jurors, but I know what you're saying. All right. But the problem is that. Unanimous but short. Yes. Well, no. The problem, obviously, is that the jury instruction ultimately given to the jury was hopelessly confused. And the parties didn't apparently recognize it. I would note, though, Judge, that there is some evidence in the record that the defense lawyer did see the problem because at the end of the case, she asked the district court, Judge, can we poll the jury to find out with respect to which possession are they convicting them of? And then the government prosecutor objected. The district court said no. And had that been done, we might be here. We'd probably be here on the other issues. But we certainly wouldn't be here in the position we are with respect to that jury instruction. I think she's done, and now I'm coming full circle back to the question of whether the issue was preserved adequately enough to have the harmless error standard apply. She did everything she could to raise this issue. She was saying from the beginning, this is a duplicity issue. If they're going to use the evidence of the reservation statement, they ought to use it as just evidence that he possessed it during that time period. But they can't use it alone. Well, didn't the district court, after the jury retired for deliberations, ask counsel, are there any objections you wish to make of record to the instructions as given? I don't remember that, Judge. I apologize. I don't remember that. It could very well be that that was the case. I recall from the record she did object to the jury instruction. She was objecting on the duplicitous nature of the indictment. And then at the end of the trial, when the jury came back with its guilty verdict, she did request that the jury be polled on that specific issue. Why the government objected to that, I don't know. But I think that would have helped out on that issue, Judge. There are other issues we've raised in the brief. They're mixed. I think the one that I think follows from the duplicitous nature that I think ought to be addressed, at least in oral argument right now, is the speedy trial issue, although it seemed to be given sort of short shrift because of the Perusco case. If this was, in fact, a duplicitous indictment, if, in fact, he could have been convicted specifically on the reservation statement alone, that clearly was charged in the complaint, not charged in the indictment, but then recharged in the superseding indictment. And that distinguishes this case from Perusco because those are specific events for which he could have been convicted. And that ought to be addressed as well. I wanted to make one more point, Judge. This could have been cleared up. If the government had gone back and superseded in a way where it had three counts to the indictment, the jury would have been required to make a finding beyond a reasonable doubt with respect to each possession separately, and that would have cleared the issue. And it wasn't the defense theory of the case that caused the problem. It was the prosecution's theory of the case that caused the problem. I'm reserving more than the time I anticipated, but I'd like to sit down at this point. You may. Good morning. Joan Ruthenach here on behalf of the United States. I'll begin with the unanimity issue. It's the government's position that there was never any objection on the jury instruction with regard to a lack of unanimity, and therefore review should be for plain error. Okay. Is there a point? No. Well, all those or's in there, which one did the jury pick on unanimously? I will submit to the court that the jury instruction is ambiguous, but that doesn't make it plain error. Because, and I say that because. You see there's no showing. You say it's ambiguous, and you concede that the language used is phrased or this, or this, or this. So you have three alternatives, A, B, or C. And there's no statement by the district court that the jury is to agree on one or all or the other of what they're dealing with. I'd submit to the court that. Isn't that plain error? No. And the reason is this. None of the parties involved, not the court, not defense counsel, not the government, understood this instruction. And I'm using double negatives. But everyone understood the instruction to require unanimity with regard to the particular act of possession. Based upon what it says? How can you say that? I've read this instruction repeatedly, and it is unbelievable in the amount of or's and dates and everything that's confusing. And I quite frankly was having difficulty deciding which period of time that the judge was referring to. I can specifically refer the court to affirmative statements by the court and by defense counsel and the government, wherein they believed it to require unanimity with regard to an act. But is that conclusive on us then? No. But if the court. Are we supposed to look at it and try and put ourselves in the eyes of the jury and trying to figure out what, as reasonable grammarians, they would have understood this instruction to require them to do or not prevent them from doing in either case so that they wouldn't necessarily all come up with the same answer to the right question? No. What I'm saying is that what the court can find is reasonable minds can disagree as to the interpretation. And if you as reasonable minds disagree, then the error cannot be plain because it wasn't noticed by other reasonable minds. So if all three of us agree that we're confused by the instruction, then it's a reasonable mind on the court of appeals and we would reverse, right? No. We have to listen to you. Do you get a say on this? She certainly hopes. She's trying to get it. Are you the one causing the confusion? Or was it the trial court? I don't know if it's fine to answer that question. I'm sorry. I should put it that way. This is why we tape these so the laughter comes across. There is, again, in analyzing for plain error, you're going to look at what the parties understood. And I didn't give the court those sites, but I would like to so that you can go back and look at it. At ER 357 to 359 and 502, the district court says very clearly that she believes her instruction requires unanimity with regard to the particular act. In addition, defense counsel, when she posed an objection to this particular instruction, did it on grounds of the corpus delecti issue. And she said, but Judge, there's a problem because if they unanimously agree that it's B, which is the possession on the reservation, then you're allowing them to convict based on solely the defendant's statement without any corroborating evidence. And I suggested to the court that what saves this from being plain error is, first of all, the confusion as to how to actually read the instruction. But second of all, these instructions were read to the jury by the district court prior to the giving of closing arguments. That's the practice of this court. Afterwards, in closing argument, the government specifically argued to the jury that they must unanimously find the particular act of possession. They also were told by the instructions that argument is just that. It's not evidence of anything. And that you are to faithfully follow my instructions and not what counsel suggests you should do necessarily. If it's within the scope of the instructions, fine. Correct. So, you know, the fact that the government points it out, how much persuasive impact that has on an individual juror or the community of jurors, I don't know. And many people have said little. I can only suggest to the court that in light of the fact that the jury instruction was correctly argued, that the jury would take that argument and apply it. There was no contrary argument by defense counsel. And I'd point the court specifically to ER 523 where the government argues this particular instruction. It's all in relation to you must find unanimously a particular event. And the crux of the government's argument was you should find possession during the entire period of time. But if you don't, you must be unanimous as to the one that you do find. And I'd submit that in light of the correct argument and the fact that reasonable minds can disagree, that this court should not find that there was plain error, particularly in light of the evidence that was presented. Okay. I'd also like to discuss the corroboration issue because counsel maintains that there was no corroboration for the statement regarding possession on the reservation. And I disagree with that because, in fact, there was testimony by the defendant's own witness that she had been on the reservation approximately two weeks before the defendant was arrested in the same car, shooting the same gun on the Gila Indian Reservation, which is located in Arizona. That time frame overlaps with the period of time during which the defendant admitted that he was on a reservation in that car shooting that particular gun. And the argument that the government made to the jury was you can base your conviction on that statement because it is corroborated by the fact that both of these individuals have admitted to shooting a gun. And it's most likely because they are friends and have been friends for a four-year period that they were together when they were shooting the gun on the reservation. That's Ms. D. Tom? Correct. With regard to the Speedy Trial Act issue, the indictment was superseded, and it was superseded to include the period from May 19th to June 7th. The government submits that. It was the trial prosecutor's argument throughout that that was the period of possession and that there was continuous possession. And during jury instructions, that was made clear to the court. The government's position was, no, we intend to argue that that is the period of possession. Therefore, the fact that the government superseded with this broadened timeframe does not alter the charge that was brought against the defendant. It merely modifies the timeframe, which is more of a factual allegation as opposed to a charging allegation. But the way it winds up, these all sort of feed into each other, it starts out with a date specific, and then it expands, which then allows you to bring in the reservation, which is another. And then it winds up at the end of the case that it's not just a question of June 7th, but maybe it happened at another time. That sounds like that's now two different events. But you're trying to bring them in now under this umbrella of one continuous possession, but maybe it's okay if it was only on one day or another day. I submit to the court that we'd be in the same position even if the indictment hadn't have been superseded, because, as the court's aware, under an on or about instruction, the government's given leeway as to its proof regarding a particular possession. So it would have covered the period. But if the actual scenario had been focused on stop on June 7th, the on or about to go back to May 19th or about a week thereafter wouldn't be even close to being on or about, would it? There's got to be a reasonable time period that you're on or about. Whether it's June 7th or June 5th or June 9th may be on or about, but looking three weeks or a month before on a separate location under a separate set of circumstances, isn't that much more than just on or about a particular date? I agree with the court that the May 19th date would be perhaps more than the on or about period. But the only evidence regarding May 19th was that that is the date of the purchase. So isn't that a substantive modification to the indictment, then? If you agree that that's a much different time period, a much different factual scenario, isn't that a substantive issue that you've now gone to? No, because the evidence of May 19th was going to come in anyway, because that was the purchase date of the gun. So you're merely expanding the time frame as opposed to changing the charge, because there was no dispute that this gun was purchased on May 19th, that the defendant was present during its purchase. And so you've got that as your starting point. The government's allegation was that sometime subsequent to that date forward, and I believe that any of that evidence would have come in had this date been solely June 7th, because the government would have been entitled to show this is the date that the gun was purchased, this is who was present during its purchase, because it all goes to the knowledge of the defendant regarding the existence of the gun, his relationship to the gun and the car, and the people involved. I know I'm missing an issue. Well, we do read the briefs. With regard to the stop, I believe that we've sufficiently set forth the government's argument. One thing that occurred to me after writing the brief was the fact that once the defendant was stopped for the cracked windshield and he was asked to provide proof of insurance registration and his license, as is required under Arizona law, he could provide none of those things. Therefore, the police officer was under an obligation to get the individual out of the car because he could no longer drive that car without that documentation. So from that point forward, then it was at that point that the spontaneous statement was made regarding I've got a prior conviction and I just got out of jail a year ago. So is that why you think this is different from Chavez-Valenzuela? I think it's different in a way, but also because of the statements that were made. So now you've got a legitimate stop, the fact that the defendant can't drive the car anymore, so he's out of the car. He makes a statement as he's getting out of the car that I've got the prior conviction. And the officers had testified that previously they'd noticed the shoulder dip. So all those things taken together, I believe, justified taking him to the back of the car, doing a computer search, finding out that he did have a prior felony conviction, and searching the car with his consent. I think that there was a legitimate and reasonable extension of the initial stop. So if there are no further questions. If I may just address Judge England's point about the time frame being on or about. The government clearly changed its theory of the prosecution either along the way or by the time it got to the jury. And I think the record strongly supports the fact that the government argued to the jury unequivocally that his statement alone could provide the basis for the conviction. And I would refer the court to ER 528, where the counsel for the government argues to the jury, speaking about the admission to Officer Favela that he shot the gun on the reservation about a week before. She says, and this is one of the events that U.S. jurors may find the defendant guilty beyond a reasonable doubt for this event. The defendant admitted to that. He admitted to that possession. And then in my reply brief, I give two more instances where she does the same thing during the closure. But their argument is, look, all they did was they alleged the original indictment was June 7th when he was picked up with a gun in the car, and that by almost a certainty, they would have gone back to the 19th and established possession. So that time frame would have swept up, as a matter of proof, any of the events intervening. I agree with that, Judge. But with this caveat that this court has said in the United States, and I can't pronounce the name very well, Haradner, that it has to be uninterrupted possession. And they were having trouble proving to the jury that it was uninterrupted possession, especially because their subsequent investigation revealed witnesses who were saying the gun was everywhere. The gun had traveled from sister to sister's friend to a guy named Richard Hoover or Richard with last name unknown or whatever the situation was and the facts that were in dispute. So the government decided that it was going to take the strong road and say that statement alone was enough. With respect to the corpus delecti doctrine, which I do believe is a strong issue in this case, the government would have to concede that the jury instruction itself categorically separates that Indian Reservation statement alone as a basis for conviction. And because it does that and because the only evidence is that he possessed the gun himself, I believe at that point we are running into a corpus delecti problem. With respect to the court's discussion with the prosecutor right now as to the effect of the trial court's lawyer, the government's lawyer, that she did argue to the jury that they were supposed to find unanimously as to which possession. We decided in our opening brief as well that they did argue that. I think that does reflect the fact that the parties at least judge the defense lawyer and the prosecutor believed that that was the law and that's what they were intending to do. The question of harmless error though and the question of plain error is not really what they intended to do. The question is should it have been plain that we have a violation of the law here, that we have the violation of the Sixth Amendment right to a constitutional unanimous verdict. And I think that should have been plain to everybody. Quite frankly, the folks should have looked at that jury instruction more carefully. If you prevail, what relief are you asking for? Reversal on the conviction, Judge. Reversal on the conviction, remand for a new trial? Remand for a new trial and with a jury instruction that requires unanimity. And quite frankly, I think the government would be well advised to clear up the point at which they think he possessed a gun if they want to indict him on three separate counts. That certainly would clear it up and require unanimous instruction. And I would point out to the judge, there's a lot of case law out there that jurors are presumed to follow the court's instructions. And those instructions in this case were hopelessly confused with respect to unanimity. And there is at least a 50-50 chance. If I'm right, the jury could have easily found in bits and pieces which possession it was. If the government's right, perhaps they didn't. There is a significant and a substantial likelihood that the jury didn't find a unanimous verdict in this case. And that's all I have, Judge. Okay. Thank you. The case just argued is submitted. And, again, we thank counsel for their argument.
judges: Beezer, Fisher, England